Good morning, Your Honors. Pamela Colon on behalf of Stacey Ambrose. At this time, I would like to reserve five minutes for rebuttal. Thank you. As Your Honors are aware from the record in this case, my client, Mr. Ambrose, at trial was forced to deal with a moving target. And I think it would be helpful to Well, how far did the target move? I'm sorry, I didn't hear. How far did the target move? Especially at Count 1. Let's take that for a second. Count 2 is more problematic. Count 1 went from on about July 26th to July 29th to a specific date, which was within that time frame. So did it move at all? It certainly did because initially the allegations were to cover a period of, I believe it was June 26th through June 28th. And it did move because now everything that was to have occurred was to have occurred on June 26th. And when you take a look at the statements that the complaining witness had given, much of what she complained about happened over a three-day period, not on that one single day. Is it on or about sufficiently? Not in this case, Your Honor. It can be in certain cases, but the problem here is that there were specific things alleged to have happened on specific dates. And that was the initial information that my client was presented with. That's what he was initially prepared to go forward with. And when it was all changed to one date, that changed dramatically the approach because there were defenses to where they were on the different days. And who was with them on the different days and who was witnesses to the activities of the different days. You finally ended up having to shoot at. That didn't change your defense because given the date range that you initially prepared to file for, if you're lining up witnesses to say who Mr. Andrews was with on any of those three or four days, the one day that ultimately became the charging day, that same witness would have been available to testify about Mr. Andrews on that one date because of the date range. But the problem is that the activities that he is accused of that were to compromise the facts that would support a conviction didn't necessarily happen on that day. So the witness for that day, for the 26th, would not be able to necessarily conflict with the evidence because the evidence for the 26th didn't contain all of the necessary elements for the crime. The evidence was spread out over those three days. So it did impact it, but even more importantly, the fact that it went from simply pointing the weapon as the essence of the charge to striking and at the very last minute striking presented a whole different set of circumstances that Mr. Ambrose was forced to defend against. The striking allegation was set forth finally and only in the amended superseding information? The striking, yes. On September 28th. And that was after the close of all evidence, after... All that was alleged to have occurred at the same time, wasn't it? The pointing and the striking and the threatening? It was alleged to have occurred at the same time, but... Well, there was a continuum of activities here, and the problem is that with the continuum of activities that the complaining witness complained of on each day, now all of a sudden it was condensed all into one day. And the presentation of evidence necessarily had to change, and necessarily had to change particularly with regard to the striking after the case had closed, after all evidence had closed. Is the notice deficiency in the charging instrument or the activities that took place after by the trial judge? The notice deficiency is in both. It is in the charging document itself because the charging document, one, changed the date, and two, did not include striking. To go beyond that, what did the trial judge do that created a notice deficiency? The trial judge allowed the amendment, the amended, I believe that's what it was called, the amended superseding information after the close of evidence that changed the initial factual scenario or the factual allegations from simply pointing to actually striking. And let's face it. Emphasis on the factual allegations because with respect to count one, the charge and nature of the charge never changed throughout the four iterations of this information. That's true. By the way, does it make any difference for variance purposes that we're addressing an information and amendments of an information as opposed to an indictment? I do not believe so. There would be no logical legal analysis for that. So given the fact that the charge didn't change, and we'll get to count two of course, Where was there any prejudice experienced by your client with respect to these factual allegations, in my view, most of which remain the same, but at least with respect to the striking allegation, is a difference? Well, I think first of all you have to look at, and other courts have concluded this as well, there was a case in Minnesota, and granted it is a Minnesota state case, but nonetheless, the state of Minnesota versus Guerrera. And in that case, the court held that there's two ways that an amendment can provide an extra burden and become a variance, even if the same behavior, the very same behavior is alleged. And in that case, they said one of the ways that that can happen is if you have the same behavior but different factual allegations, or if you have, so in other words, a variance can occur whether or not the change in the allegations relate to the facts, or the description of a legal violation. Judge Smith had asked you about prejudice. Yes, and well, if you look at Rule 7e, that's discussed in the disjunctive, and that's why I'm answering both things. One, I don't think prejudice is necessary, but two, there is prejudice. And the prejudice here is if my client, Mr. Ambrose, had had advance notice of the fact that the striking was going to be a factual element. Because we don't know what the jury decided. We don't know if the jury believed that he pointed the gun, or that he struck her with the gun, or that he did both. We don't know. So the jury could have found that he never pointed the gun, maybe struck her from behind with the gun, so that she never even saw the gun coming, but nonetheless got hit with the gun. You cited this to a Minnesota case. And I would grant you I have not found a Third Circuit case directly on point with this case as to count one. But we have suggested in what is now an older case, a 1985 case that Joseph, and did so in a footnote, we indicated that a defendant suffers prejudice when the amendment restricts his opportunity to prepare an adequate defense. So that clearly would be prejudice, but how did that occur here? Because if he had known ahead of time that he had to defend against striking, he may very well have had medical testimony come in. He may have had photographic testimony come in. He may have offered something to contradict that this woman had never been struck. Is may have sufficient to demonstrate prejudice for our purposes here? Well, when we look at the case law that takes a look at the variances and where prejudices are, the very essence of the problem is you cannot look at the record, the trial record before you, to determine whether or not there was prejudice, because you don't know what would have been done had the trial attorney been given proper warning of what the allegations were going to be and been able to be bringing in this evidence. And yes, I think it is sufficient because the very essence of the problem is there was no notice. Given the time limitations here, and I think the panel has suggested at least that there are differences between the count one differences or possibly variance in the count two differences. Yes. And so I understand here this case was sent back by the Supreme Court for retrial. You want discharge. You want dismissal. That's correct. I understand. That is exactly correct. So that's the difference in the grant of cert here. So tell us just how this amendment of the information took place when and how it impacted on your client with respect to the count two charge. And I'm particularly interested in knowing your position with respect to whether what was added was an element of the count two unauthorized possession offense, that is, during the commission. Of a crime of violence, yes. First of all, the history starts out. The initial information was brought in August of 2004. At the time of trial, the day of trial, August 29, 2005, right before the jury was selected and sworn, the government amended the information and they charged in count two that Stacey Ambrose did unlawfully possess a firearm, namely a handgun, in violation of Title 14 BIC Section 2253A. At the start of the trial, that charge, just as I read it, was read to the jury, and that can be found at the appendix at page 96 and 97. On September 8, 2005, after the close of all evidence, both parties arrested, after Rule 29 arguments, the government filed an amended superseding information, and that's the one that changed count one but did not change count two. So even in the amended superseding information, count two read, just as I read, no crime of violence involved. However, the court, over the objection of Defendant's Counsel, Trial Counsel, instructed the jury that the defendant is charged in count two with the amended superseding information with the crime of unlawful possession of a firearm during the commission of a crime of violence in violation of Title 12 Section 2253A. And the court went on to explain that the burden of proof went to this charge, including during the commission of a crime of violence, and ultimately that's what Mr. Ambrose was convicted of. The problem is that the court itself amended sua sponte, and converted the amended superseding information to add this additional charge. Constructively? Constructively, exactly. So there was a constructive amendment by the court. This isn't even something that the government charged. The theory of your defense was to defend basically against the possession. Correct. Straightforward possession, not during a crime of violence. That is absolutely correct. But the jury's verdict, however, by implication, found him, did it not, guilty of possession? It did, but the fact that they could have found him guilty on the facts of this case, of this crime, during the commission of a crime of violence, is not what's relevant. But they found him guilty of the original, of the charge on which you defended, did they not? In other words, to find him guilty of possession during the course of a crime of violence, they had to find him guilty of possession. That's true. So, in other words, your defense was not prejudiced, because your defense was against the possession charge, and the jury, by implication, found him guilty. Well, I believe that the defense was asked to the possession charge, but we were prejudiced in that the defense did not address that the crime occurred during a crime of violence, that the unlawful possession occurred during a crime of violence. I'm just trying to see the prejudice issue. I don't get that. I guess you're arguing that had you known what charge the jury was going to be asked to consider, you would have defended against this totality of these facts, rising to the level of a crime of violence. But you still stuck with the fact that he possessed a gun. The jury found that he possessed a gun. So, would it matter for purposes of the count, too, whether or not he possessed it or possessed it during the commission of the crime? It's a dramatic difference, because the difference is in the sentence. And the sentence for a simple possession was a minimum of six months up to five years. If we were to send the case back, we would send it back for resentencing, as opposed to a trial on the merits? Well, I would argue that no. Because he was convicted on a variance, this requires straight-out acquittal. You think the added element might have, in fact, prejudiced the jury in its ultimate deliberations. Exactly. Exactly. And there's no way to unring that bell at this point. I guess you could have argued to the jury in the alternative that the evidence does not prove beyond a reason about my client possessed a gun. But even if you are so misguided as to find that my client possessed a gun, the government has not produced sufficient evidence to show that he possessed it during a crime of violence. You could have clearly made – you wouldn't have avoided it that way, I would say. You could have made that argument, so that even though you lose the possession charge, the jury has a reasonable doubt about the crime of violence part of it. Exactly. And there you've got a situation where, yeah, he possessed it, but the crime of violence is not proven. Exactly. And I agree that potentially looking at the entire charge may very well have influenced the jury's verdict, and perhaps without the crime of violence attached to it, they may not have found – I don't know. I mean, we can't get into their heads. But that's the problem with a variance. That's exactly the problem with a variance, and that's why acquittal is required. You had another argument. Would you finish that? I'm done with this one. Yeah, no, but – The other argument went to – We're running out of time. There was another argument that I thought you should address, which I'm uncertain about, which is the Supreme Court's failure to address the sufficiency of the evidence charge, which is related to a double jeopardy issue. And I thought it was an interesting issue, and I thought your arguments would help. If I may, I would love to continue. Thank you. Thank you very much. With regard to that, the issue was the count of unlawful possession, and it did go to the sufficiency of the evidence. This Court has repeatedly held that under our statute 2253A, unlawful possession of a firearm, the government must prove the unlawful section of that, and it is the government's affirmative duty to do that. And to do so frequently, what the government does, and what they attempted to do in this case, is either bring in by live testimony, which is what's appropriate, a person who will come in and say, we've examined the records, and this person does not have a firearm license, either in St. Thomas Division or in the St. Croix Division. They did do that with regard to the St. Croix Division in this case. However, Sergeant Brown of the St. Thomas-St. John Division was not apparently available for trial and did not appear at trial. Do we know? I thought it was unfair if she was available. I don't know if she was or she was not, but she didn't appear. But let's just say, at a minimum, we know she didn't appear for trial. And no evidence was put out about her availability. Exactly. We don't know why she did not appear, but she did not. And it's also very clear that Mr. Ambrose never had an opportunity to cross-examine Sergeant Brown. However, the government was allowed, over objection of counsel, to bring in the Certificate of Absence of Firearms License document, and that the court felt, the trial court felt, erroneously, was sufficient enough to show that Mr. Ambrose did not have a license for his firearm in the St. Thomas-St. John Division either. So, explain to us, if you would please, the difference in terms of the Confrontation Clause between a certification that is appropriately, correctly admitted, indicating that there is a record of a license having been issued or a permit having been issued, as opposed to what we have here, which is a certificate of the opposite, of a nullity, of the fact that the records search has produced a result indicating that there is no such record. Well, the searcher can be examined as to the nature and extent of the search and can be cross-examined with regard to the sufficiency of that search. The searcher can be examined, too, with respect to a certification that says, I've looked at the records and there is, there has been a certificate. True, but you can actually produce the license in that circumstance. Here, there's no actual evidence to support the testimony. All there is, is the testimony. And your argument is that had the Virgin Islands Supreme Court reached that issue, which apparently did not, it might have acquitted the defendant on the issue. I believe they would have, at least as to that charge. And that this would be a violation of the Confrontation Clause pursuant to Crawford and Melendez-Diaz? Absolutely, because this is not a business record. This was prepared specifically for the litigation of this case after Mr. Ambrose's arrest, and it's clear that it was because that was the testimony of the police officers that requested it. And you further argue it constitutes double jeopardy to send the case back to trial. Absolutely. But, now, do we make that decision, or does the Virgin Islands Supreme Court have to decide it in the first instance? The issue with regard to the double jeopardy? The issue regarding sufficiency of the evidence. I believe that Your Honors can make that decision. I think that it's an appropriate decision or appropriate issue to be addressed here. It's on appeal from a district court, which is a trial court. We could have done it from another appellate court. Yes, I understand. I don't think we have. But, in essence, the Supreme Court's lack of ruling is, in fact, a ruling. No decision is still a decision. And the decision, because there was no decision, it was a denial of the relief requested, and I believe this court can provide that relief. But, if it is inadmissible, then there's no evidence. There's just no evidence in there. Correct. Correct. Okay. Ms. Sloan, thank you very much. Thank you. Mr. Phelan? Good morning, and may it please the Court. Matthew Phelan, Assistant Attorney General on behalf of the people of the Virgin Islands. Initially, I would like to point out to the Court that, in regard to the information in what was filed with the Court, what Stacey Ambrose was given notification of, the very first information stated in there, hitting with a gun, another information stated that as well. So, at all times, Mr. Ambrose was put on notice and was able to— Except when the trial started. He said— Except when the trial started. I mean, if you give somebody notice six months before the trial of what they're going to be tried for, and then the day of the trial, say, oh, we're not going to try you on those charges, we're going to try you on these charges, it's not really fair to say that he was put on notice as to what the jurors were going to be asked to do to consider it and what he was going to be on trial for. This is really a—I don't know if you're the trial counsel or not, but frankly, this is a mess. I mean, the way this thing was done, every other day there's an amended— there's a superseding amended indictment. This is a mess. Absolute mess. I think both of us in our research, we weren't really finding cases that— I would hope not. I would hope not because this is not something that has ever happened before. And then for someone to be in prison for 20 years on this kind of a sloppy prosecution, if he did what he was charged with doing, he may well deserve to sit in prison for 20 years. But it would be kind of nice to think that he'd had the process, the prosecution inquiry, to get him there. And furthermore, with the other counts that the jury ended up, 4, 5, and 6, that they were hung on, those cases were crimes of violence just as assault is a crime of violence. So as far as any prejudice that the defense is alleging, you really don't see it here because— Well, you certainly do because if you're going to trial on a possession charge and you're told when the trial starts that you're to defend the possession charge and then the target moves in the midst of the trial and all of a sudden you're defending possession during the commission of a crime of violence, your strategy changes. I mean you completely undercut the defense strategy in the trial. That's because of the sentence variation because the defense counsel might very well say, look, they got us on the possession charge. Your prints are all over the guns. There's witnesses. You're dead there. That's a five-year exposure. But I think we've got a shot on the possession during the commission of a crime of violence. That's a much more significant hit. So to earn jury credibility, we're going to concede the possession charge, but we're going to fight tooth and nail on the commission of a crime charge. That is a very—I can't say what the defense counsel would have done, but that is certainly a very legitimate strategy to dart against that 20 years. I guess it would be 20 to 30 years. That is a very significant sentence on that during the commission of a crime of violence. In fact, while it hasn't been suggested here either at argument or in the briefs, as far as I can recall, one might even entertain consideration of a plea based upon charges of lesser severity than what we end up having here. You would concede that this is a constructive variance that took place with respect to count two, wouldn't you? Count two? No, I can't concede that, Your Honor. Well, because if you did, at least with respect to the cases, if this were an indictment, I mean you'd be looking at a per se violation. It's a constructive variance. The thing about the way that 2353 is written, it specifically states as a sentence enhancer, if it's committed during the crime of violence, then the punishment goes up. So if on count one, Mr. Ambrose had been acquitted with the language that went to the jury or with the language as stated by the trial court, with that going to the jury, when it came time for sentencing, there would be no underlying crime of violence to which he would then be exposed for a violation of his rights. He would just be 2253A, unauthorized possession. So inherent in the 2253A, during a crime of violence, you have to find that first, that count one, that there was assault with the intent or third degree assault. So it's general. So that would be the government's argument there. Secondly, in regard to one of the issues that the court raised, and that was in regard to finality and whether this is a final judgment and whether this court should even hear it, there's a question. I would point to the court that since obviously this is a new situation for the court, one of the first few cases that have been granted cert, there is a case that the court has come out with in either Picardo or Pichardo, and in that case it was clear that the Supreme Court was ruling on a final judgment. There was no doubt about it. All they were doing is remanding back to Superior Court, down to the Department of Labor, and it was a purely administrative action. In this case, what we have here is a remand for retrial. So this is not final yet, and under 48 U.S.C. 1613, there's not going to be any denial to the defense's rights because this possibility of appeal is always there. Mr. Phelan, there just may be, though, if we agree with Ms. Colon, that double jeopardy is implicated in this case. Don't we have jurisdiction? Yes. If the Virgin Islands Supreme Court did not address the sufficiency of the evidence claim that was raised by the defendant, and that sufficiency of the evidence claim is related to double jeopardy. In other words, if he had been acquitted by the Virgin Islands Supreme Court and to the judgment in his favor, then, of course, that implicates double jeopardy if the case is sent back. Right. Doesn't that not give us jurisdiction to address that case? Well, I think the way that the court can look at this, what's very helpful, you don't have to reinvent the wheel. It's already out there for you, and that's the Ninth Circuit, the way that they did it with Guam. And there's a case there in which the former employee of the Department of Law, and he had appealed. And basically, the Ninth Circuit went through the analysis and stated that they would look at it almost the same way that the Supreme Court looks at getting their cert under the U.S. Supreme Court under 1257. And so they said it would be in very limited circumstances that they would grant the cert. Double jeopardy implications is not one of those limited circumstances? Well, it would be, but the issue here is, as you pointed out under Burke, and the finding of sufficiency of the evidence, the determination of, is it all we have here a fundamental trial error issue with the charging document, or is it an actual insufficiency of the evidence? Well, in the Crawford issue, it's totally insufficiency of the evidence. If that affidavit or that certificate should not have been admitted in the trial, there's absolutely no evidence whatsoever on the cellular register. So then now we're into a Crawford analysis of – And it seems to me that no one cited this case. In the Supreme Court case, Melendez v. Diaz, it seems very clear that we have a situation where you're producing a record for a trial solely for the purposes of showing the absence of a fact. That is testimonial under Crawford, and it falls within the hearsay requirements. It's not the same as a record which is normally kept in normal course of business. It is very, very different. I understand that point, Your Honor. And I would say, looking, as I stated in my brief, if you look at Melendez-Diaz, that was a Massachusetts case in regard to – It was a drug analysis, as I recall. Exactly. And so it was the chemists or – So? They were analyzing what was the content of it. That's a difference in terms of facts that needed to be shown to demonstrate an element, but I don't see how that factual difference is significant for purposes of applicability in this case. It's still an element, isn't it? Because the Virgin Islands has a valid police power, state power to license firearms, and that's an ongoing event that has nothing to do with preparation of trial. People are – They're showing the absence of a record solely for the purposes – allowing the government to come into court with a document to show the absence of registration to convict someone the government is prosecuting. One is very dangerous, and it seems to me exactly what prosecutors mean there. Because absent cross-examination, how do we know the thoroughness of the search? Maybe the person looked in the wrong records. Maybe the name the person was searching for was being spelled incorrectly. We don't know any of that. This has been addressed by the Third Circuit. It was an unpublished opinion. I put that in my brief. In which case, in the footnote, I believe, that the court had stated, this probably would have come in under a business exception, absence of a business entry. I think 801 – That may be why the panel decided to make it unprecedented. Thank you. So what is your request? Affirm the state court in all respects? I think that there may be the issue that the court is going to have to address, which is this is a first impression for what is finality, what is final under 1613. If the court finds that there is a problem, it would probably have to go back to the Supreme Court to then do the analysis. And I can point to one case that the Supreme Court just recently did, October 1st, I believe it is, Sherb-Elize, E-L-I-Z-E-E. And in that case, Justice Cabret stated, before addressing the consequences of the Superior Court's charging error, we must consider Elize's assertion that the evidence presented at trial was insufficient for the jury to find her guilty of aggravated child neglect. We consider this assertion because, although a court's erroneous jury instructions may entitle the defendant to a retrial, a reversal for evidentiary insufficiency is considered to be the equivalent of an acquittal. And it's citing Movement 1-B-10. What is the site for that? Yes, sir. That is 2010 W.L. 4962915. So it may be as this court granted cert that the Virginia Supreme Court took notice of the grounds for cert and is now applying that analysis. Let me give you a reference from Melinda. I hate to keep coming back to her, but I told you. The court there said, and this is talking about a drug analysis, but looking at the profit issue as to whether or not someone could present the results of that analysis consistently, profit in that it was not testimonial and, therefore, solid side judge. This is their assertion. The court said a cert could, by affidavit, authenticate or provide a copy of an otherwise admissible record, i.e., business record, but could not do what the analyst did here, which is create a record for the sole purpose of providing evidence against the defendant. Why isn't that exactly what happened here? Because there's no indication at all about whether or not the person was available to testify. I think, as I stated, page 24 of my brief, in obitur dicta, the court reasoned that a clerk was permitted to certify to the correctness of a copy of a record kept in his office but had no authority to furnish as evidence for the trial of a lawsuit his interpretation of what the record contains or shows. What would be your argument, that the certificate or the record would create a presumption of no registration, no license, and then it reverts back to the defendant to prove that I did register the gun? Right. I mean, at some point in time, I don't think that there's any… But, of course, it is the government's burden to prove the absence. Right. I was going to say we can't shift the burden to the defense for an affirmative defense. But isn't there a substantial difference, a material difference, between a certificate from a clerk which does no more than say this document which is in existence is what it purports to be. That's what a clerk's certificate says. It authenticates an existing record. That's not the same as an affidavit or even a certificate which goes beyond and says I searched, I looked, this is where I looked and what I was looking for, and I didn't find anything. Much broader, isn't it? Something that certainly opens up, at the very least, a much broader range for cross-examination. One of the things that I noticed that the Supreme Court stated in Melendez-Diaz and we hope that the defense counsel would play nice and that we would not have to be bringing in chemists for every single trial, I think… Why not just do away with the trial process? Why not have the defense counsel really play nice, say, look, they caught you. We're not going to put the burden of a trial and investigation on the government and spend taxpayers' money. They're just going to feel guilty. Why don't they really play nice? Why don't they become just an agent of the prosecutor? They could do the investigation for you. When I read that language, Your Honor, I thought, well, there goes a lot of advocacy in the Virgin Islands because we have a very unique situation here. Unlike any of the other states, we have the Keeper of the Record St. Thomas District and St. Croix District. And so due to travel back and forth, that's why we have come up with this process the way we are doing it. You said traveling back and forth. Do you know what this is? I'm on the Internet right now. Why would you have to travel back and forth? You take two seconds and send an email message. They send an email message back. You spend a few electrons in the process, and nobody has to leave their seat. You can do it from the comfort of your home kitchen. That would be as far as live testimony for confrontation. But as far as accessing the actual file, I am not sure if our gun licensing is even computerized. That would be very sort of down for cross-examination. What is the state of the record? If it's not computerized, how long have you worked there? During the course of your tenure there, how many times have you searched for a document, not been able to find it, only to find out sometime later the document had been misfiled? That would be something the defense attorney would really like to be able to get at. And it may have happened here. Well, it's conjecture, but you're right. And the thing is if you look at the cross-examination of Detective Felicien, who was the St. Croix authenticator of the document, the cross-examination of him did not go that far, and there really was no issue with that. It was purely 100% the person who's not here. Attorney Brush, one of the better litigators that we've seen in the territory, had also had prior cases that they were St. Thomas cases, and he would make the same argument when Detective Felicien did not come to St. Croix. So at all times it was not a question of whether the person was doing a good job. We're just invoking the Sixth Amendment because I can get you on that. Thank you very much. Thank you. I thought that somewhere in one of my briefs I had mentioned the fact that perhaps had Mr. Ambrose known that he was facing this enhancement on count two, he might very well have more seriously considered a plea. Perhaps you did. I simply didn't recall. But if I didn't, that is exactly the kind of problem you're faced when you have a variance because we don't know what the past would have held had the circumstances been different. But that would have been a real possibility here because, as you point out, the maximum sentence was four times as much. And certainly even the advice his trial counsel may have given him may have been very different as well. So I do think that at a minimum we can show that there was prejudice with regard to that. As to the Crawford issue, I don't see the distinction between Melendez-Diaz in this matter. The areas of cross-examination that your honors have suggested are exactly the type, particularly with the St. Thomas office because, you know, not on the record here, but the St. Thomas evidence office and the St. Thomas records office has undergone significant damage through mold, rainstorms, hurricanes throughout the years. And that would have definitely been examination potential had trial counsel felt it was appropriate. That was completely not available here because the witness was not presented and no reason for the witness not being here was presented. Given that, and given that as just the recent case, the Alesi case out of the Supreme Court, suggests this does implicate completely an acquittal if there was insufficient evidence and if this information, if the certificate was improperly admitted, there would have been a complete absence of evidence, then this conviction, at least as to count two, must be completely nullified. There has to be an acquittal entered here. The Supreme Court, by not addressing this directly, implicitly said there was sufficient evidence, implicitly ruled that, and sent it back for a retrial. Because had they come to the conclusion that there was no sufficient evidence as to count two,  So I don't believe that simply because we don't have that explicit ruling, your honors are not in the position of dealing with a final order here. This is a final order with regard to whether or not, at that trial, there was sufficient evidence to support count two. Now, we don't know. On the retrial, the government may not want to take that risk and may make sure that they have everybody there. That certainly is going to give them a second bite at this apple that would be inappropriate under double jeopardy standards. And for that reason, both the variance, which requires acquittal on both counts, as well as the insufficiency of the evidence, which requires acquittal on count two, we are requesting that your honors in this court acquit Mr. Ambrose on all the charges that were presented, and upon which he was found guilty by the jury. Thank you. Thank you. Enjoy your day It was raining when I looked out my window. Enjoy your day any how.